In re W. Dwight FRISBEE, Jr., Debtor.

Margaret M. FRISBEE, Plaintiff,

v.

W. Dwight FRISBEE, Jr., Defendant.

Bankruptcy No. 91–12236–K.
Adv. No. 92–0115.

United States Bankruptcy Court,
W.D. Tennessee, W D.

Aug. 20, 1992.

Elaine G. Ramer, Jennings, Lane & Ramer, P.C., Murfreesboro, Tenn., for plaintiff.

Ken Walker, Walker, Walker & Walker, Lexington, Tenn., for debtor/defendant.

Julie C. Chinn, Asst. U.S. Trustee, Memphis, Tenn.

Michael T. Tabor, Chapter 7 Trustee, Jackson, Tenn.

MEMORANDUM OPINION AND ORDER ON COMPLAINT REQUESTING DETERMINATION OF DISCHARGEABILITY

WILLIAM H. BROWN, Bankruptcy Judge.

This cause is before the Court on the complaint of the plaintiff, Margaret M. Frisbee, requesting a determination of the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(5). This proceeding is core pursuant to 28 U.S.C. § 157(b)(2)(*l* ). The issue presented is whether the debtor's obligation to the plaintiff, under the separation agreement of October 1, 1984,[1] and the

---

1. The separation agreement was dated October 1, 1984, but signed by the parties in September, 1985.

divorce judgment of May 19, 1987,[2] is "actually in the nature of alimony, maintenance, or support" and therefore nondischargeable. 11 U.S.C. § 523(a)(5). The following contains findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

## SUMMARY OF FACTS

The record reflects that the debtor/defendant, W. Dwight Frisbee, Jr., and the plaintiff, Margaret M. Frisbee, have stipulated to the following facts. *See* Stipulation of Facts, *Frisbee v. Frisbee (In re Frisbee)*, Ch. 7 Case No. 91–12236–K, Adv. No. 92–0115 (Bankr.W.D.Tenn. June 3, 1992). The parties were married on September 11, 1975, and have two children, Diana K. Frisbee born September 16, 1978, and Dwight M. Frisbee born January 3, 1981. The parties entered into a separation agreement on October 1, 1984, and were divorced in the State of New York on May 19, 1987. The provisions of the separation agreement have not been amended or modified, except for those relating to child visitation. *Id.* at ¶s 1–5.

The debtor has been a medical doctor practicing surgical medicine since July 1, 1986. The plaintiff has been a registered nurse since 1965. She was unemployed from 1981 to 1985, but has been working as a registered nurse from 1986 to the present. *Id.* at ¶s 6–7.

The debtor filed his Chapter 7 bankruptcy petition on September 6, 1991. The plaintiff was listed in Schedule F as a creditor holding an unsecured nonpriority claim of $25,000.00. The debtor amended Schedule F on November 14, 1991, to include a prepetition unsecured claim of the plaintiff for a deficiency balance of $3,000.00.[3]

## DISCUSSION

According to 11 U.S.C. § 523(a)(5)(B), a discharge under § 727 does not discharge an individual debtor from any debt to a

2. According to the judgment of divorce, the October 1, 1984 separation agreement survived in whole and did not merge in that judgment. *See* Plaintiff's Exh. 1 at 2.

3. The Court notes that the plaintiff's complaint only puts at issue the dischargeability of the

former spouse which is "actually in the nature of alimony, maintenance, or support." *Id.* The Sixth Circuit in *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983), established a four-part test for determining dischargeability of a debt under § 523(a)(5). It decided that a more extensive inquiry is required than merely the application of traditional state law factors. *Id.* at 1109. That test is as follows:

## 1. INTENT TO CREATE A SUPPORT OBLIGATION

■ The initial inquiry is to ascertain "whether the state court or the parties to the divorce *intended* to create an obligation to provide support.... If they did not, the inquiry ends there." *In re Calhoun*, 715 F.2d at 1109. In order to make this determination, the Court may analyze any relevant evidence, including factors generally used by state courts. *Id.* at 1108 n. 7 (includes list of state court factors); *see* Brown, *The Impact Of Bankruptcy On Alimony, Maintenance And Support Obligations: The Approach In The Sixth Circuit*, 56 Tenn.L.Rev. 520–21, 542–44 (1989). One of the factors included is "the structure and language of the parties' agreement." *Id.* at 1108 n. 7. The separation agreement which the parties entered into on October 1, 1984, included the following provision:

*WIFE SUPPORT*

e) Commencing with the 1st day of July, 1986, and providing that the WIFE has not re-married, the HUSBAND agrees to pay to the WIFE the annual sum of $25,000. or 25% of his net annual income, whichever sum is greater, and which monies shall be payable in equal monthly installments forwarded to the WIFE at her place of residence.

f) Any and all payments for the support and maintenance of the WIFE shall terminate and cease upon her re-mar-

debtor's continuing obligation under the parties' separation agreement. The dischargeability of the unsecured claim for the deficiency balance would require a separate analysis and is not included in this adversary proceeding. *See In re Calhoun*, 715 F.2d 1103, 1109 n. 9 (6th Cir.1983).

riage or upon her death, or upon the death of the HUSBAND.

g) The parties hereto agree that the provisions herein are based on the prospective earnings of the HUSBAND from private practice in which he may become engaged as a professional physician or surgeon.

Plaintiff's Exh. 1, Agreement at 12.

In addition to the fact that the provision is entitled "WIFE SUPPORT," the language indicates an intention to provide support. The obligation is continuing for an indefinite length of time unless the plaintiff is remarried or either of the parties dies. *Id.* In addition, the agreement does not award any other payments or further assets to the plaintiff to be used as support. *See* Plaintiff's Exh. 1, Agreement. She also waives any claim for support and maintenance, "except as herein contained." *See* Plaintiff's Exh. 1, Agreement at ¶ 11(b).

Other relevant evidence to examine is the earning power of the parties. The obligation was to begin on July 1, 1986. The debtor was to have finished his medical residency and have become a practicing medical doctor at that point. *See* Stipulation of Facts at ¶ 6. He testified that his first job out of residency was to pay him an approximate annual income of $83,200.00. On the other hand, the plaintiff was employed as a registered nurse in 1986 and testified that she made an income that year of $10,195.00. *See id.* at ¶ 7. The Court notes that due to a difference in the degree of education, a licensed physician has a greater earning power than a registered nurse, as shown by these figures. Therefore, the plaintiff was in more need of support, with less earning power, at the time the agreement took effect.[4]

Finally, the evidence, as to the parties' intent, that this Court finds most compelling is that the debtor previously has deducted monies paid to the plaintiff under his continuing obligation as "alimony paid" on his federal income tax returns for all years since the parties' divorce. *See* Stipulation of Facts at ¶ 8. Similarly, the plaintiff has claimed the monies received from the debtor as "alimony received" for purposes of reporting income on her federal income tax returns. *See id.* at ¶ 9. The debtor has also filed an action in the Juvenile Court of Marshall County, Tennessee seeking an award of child support against the plaintiff based on her income and "on the amount of alimony she receives." This action is currently pending. *See* Plaintiff's Pretrial Brief at 7. Finally, in the debtor's Chapter 7 bankruptcy schedules, the debtor listed this obligation as a monthly expense for "alimony, maintenance, or support payments."[5] *See* Schedule J at ¶ 2(b).

In opposition to this evidence presented concerning an intention to provide support, the debtor argues that the parties intended the payments to be a property division based on his prospective earnings as a surgeon. *See* Plaintiff's Exh. 1, Agreement at ¶ 14(g). However, the language in the parties' agreement is not sufficient to prove a property division in and of itself. The debtor does argue that a recent case in New York, the state in which the parties obtained their divorce, shows the result which would have taken place in this case under New York law if the parties had not entered into a separation agreement. *Zaera v. Raff (In re Raff),* 93 B.R. 41 (Bankr. S.D.N.Y.1988). Although this case is not controlling in the Sixth Circuit, it is instructive to review because the facts are so similar. In *Raff,* the state court had required the debtor to pay his ex-wife 25% of the present value of his medical degree as

---

4. Some evidence was introduced at trial regarding the parties' financial situations at the time the debtor's temporary support payments to the plaintiff were to begin; however, that evidence is not relevant in this adversary proceeding, which is dealing solely with the debtor's continuing obligation to the plaintiff of $25,000.00 annually. *See* Complaint of the Plaintiff, Margaret M. Frisbee.

5. The plaintiff did allege an attempt by the debtor to modify his support obligations based upon a change of circumstances. However, the result is not informative because the New York Supreme Court denied the motion based on a lack of jurisdiction. *See* Plaintiff's Exh. 14.

a distributive award. *Raff,* 93 B.R. at 48–49. However, the bankruptcy court held that this award was actually "in the nature of alimony, maintenance and support" and was nondischargeable. *Id.* Thus, *Raff* merely provides more support that the debtor's continuing obligation be found to constitute alimony or support.

Therefore, upon review of all of the relevant evidence, this Court finds that the parties *intended* to create an obligation to provide support at the time they entered into the separation agreement.

## 2. EXISTENCE OF NECESSARY SUPPORT

■ The finding of an intention to support is merely a threshold matter. The second part of the *Calhoun* dischargeability test is to determine whether such intended support "has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied." *In re Calhoun,* 715 F.2d 1103, 1109 (6th Cir. 1983). "The distribution or existence of other property ... may make the continuing [obligation] unnecessary for support, as might drastic changes in the former spouse's capabilities for self-support." *Id.* Therefore, this Court may look to the "past" *and* "present need" of the plaintiff in order to determine if the alleged support has the effect of being necessary.[6] *See id.;* Brown, *The Impact Of Bankruptcy On Alimony, Maintenance, And Support Obligations: The Approach In The Sixth Circuit,* 56 Tenn.L.Rev. 507, 527–28 (1989) (citing *Singer v. Singer (In re Singer),* 787 F.2d 1033, 1038 (6th Cir.1986) (Guy, J., concurring) (citing *Johnson v. Seta (In re Seta),* 45 B.R. 8, 9 (Bankr.S.D.Ohio 1984) ("where the Court looked at the plaintiff's present needs, relying on *Calhoun* ")). One way to examine the "need" of the plaintiff is to look at the practical effect of a discharge of the debtor's continuing obligation on the dependent spouse's ability to maintain daily needs such as food, housing and transportation. *In re Calhoun,* 715 F.2d at 1109.

In this case, beginning on July 1, 1986, and continuing until either's death or the plaintiff's remarriage, the debtor agreed to pay the plaintiff the annual sum of $25,-000.00 (approximately $2,083.33 per month) or 25% of his net annual income, whichever is greater, for her support and maintenance. *See* Plaintiff's Exh. 1, Agreement at ¶ 14(e)–(f). The total evidence establishes that the plaintiff was clearly in need of support at the time the provision took effect since, in 1986, the plaintiff earned only $10,195.00, dividing into an approximate monthly income of $849.58. *See also* Stipulation of Facts at ¶ 7.

In addition, no property was distributed to the plaintiff in the separation agreement which would have made the debtor's continuing obligation to the plaintiff unnecessary for her support. The plaintiff was allowed to keep her 1982 Grenada automobile, but she remained responsible for the liability insurance on and all maintenance for the car.[7] *See* Plaintiff's Exh. 1, Agreement at ¶ s 3(b) and (c). The parties agreed to divide their personal property and furniture. *See* Plaintiff's Exh. 1, Agreement at ¶ 3(a). The plaintiff was also awarded the parties' personal residence; however, she was made responsible for the unpaid principal balance of any mortgage liens of record, real estate taxes, water charges, and all other expenses relating to ownership of a home. In addition, the plaintiff remained obligated to keep both her life and medical insurance current with her children as beneficiaries. *See* Plaintiff's Exh. 1, Agreement at ¶ 7(b), 7(c) and 8.

---

6. "[S]uch inquiry may, in effect, modify a judgment or decree of a state court. In view of the congressional mandate to apply a federal standard, this cannot be avoided.... [However], [w]hen, as in the present controversy, the decree is not the result of a contested case but merely incorporates the parties' agreement, the concern for comity is of less importance." *In re Calhoun,* 715 F.2d at 1109 n. 10.

7. The debtor was obligated to pay the current automobile liability insurance at the time the agreement was entered into, but upon termination of that insurance, the plaintiff was to become responsible for her insurance. *See* Plaintiff's Exh. 1, Agreement at ¶ 3(b).

Finally, the plaintiff received custody of her two children for the summer months, during which she must pay for their support and maintenance. *See* Plaintiff's Exh. 1, Agreement at ¶ s 4(b)(2) and 12.

As a result, the continuing obligation from the debtor had the effect of providing support necessary to ensure the plaintiff's needs. She certainly could not have paid her necessary expenses on $849.58 a month.

This Court must also analyze the plaintiff's current need for the debtor's support. The plaintiff testified to and itemized her present monthly income and expenses in Exhibit 3. *See* Plaintiff's Exh. 3. Her current monthly gross income is $2,736.57. Her net monthly income after deductions for taxes, insurance and a retirement annuity (a reasonable expense) is $1,764.17. The debtor is obligated to pay her monthly support totalling $2,083.33, making a total monthly income of $3,847.50. *Id.*

On the other hand, the plaintiff's monthly expenses are listed as $4,361.10. The debtor has not objected to the first fourteen expenses listed, which equal $1,580.50, and the Court finds these reasonable as including mortgage payments, utilities, home maintenance, food, clothing, transportation, medical expenses and car insurance. *Id.* The debtor has objected to additional expenses shown for visitation with the children, vacations, legal fees and babysitting as grossly exaggerated. *See* Post–Trial Memorandum of the Debtor, W. Dwight Frisbee, Jr. at 2. Other expenses listed are income taxes on "alimony received," miscellaneous expenses, auto maintenance, and credit card payments for which a balance of $10,650.00 exists. *Id.* This Court finds that miscellaneous monthly expenses of $100.00 and auto maintenance of $35.00 are reasonable. In addition, the plaintiff's listed monthly expenses for trips to Tennessee to visit her children do not appear exaggerated to this Court. Since the debtor moved the children to Tennessee, the plaintiff is required to pay airfare and hotel and rental car fees in order to visit her children. It is irrelevant that she has occasionally combined her trips to

visit the children with those trips to participate in court proceedings. *See* Post–Trial Memorandum of the Debtor, W. Dwight Frisbee, Jr. at 2.

Therefore, if this Court combines the miscellaneous, auto maintenance, and trips to Tennessee expenses with the first fourteen reasonable expenses of $1,580.50, the sum is $2,381.50. These monthly expenses alone total more than the plaintiff's $1,764.17 net income without her "alimony." In addition, this Court finds that the plaintiff should be entitled to some expenses for legal fees and credit card payments, which are the result of the debtor's nonpayment of the support. Therefore, the alimony due from the debtor clearly has the effect of providing necessary support when the plaintiff's reasonable monthly expenses total more than her net monthly income. The second part of the dischargeability test is thus answered in the affirmative.

### 3. ABSENCE OF A MANIFESTLY UNREASONABLE AMOUNT OF SUPPORT

Since the debtor's continuing obligation has been found by this Court to have the effect of providing necessary support, the Court now "must finally determine [if] the amount of support represented by the [obligation] is not so excessive that it is manifestly unreasonable under traditional concepts of support." *In re Calhoun*, 715 F.2d at 1110. The Sixth Circuit stated that the inquiry into the reasonableness should be limited to the amount in relation to the earning power and financial status of the debtor spouse. *Id.* If, at the time the continuing obligation was made, the debt substantially exceeded the debtor's "*present* and *foreseeable* ability to pay, the amount of the [obligation] which exceeded that ability should not be characterized as in the nature of support." *Id.* (emphasis added). In addition, the Sixth Circuit added in a footnote that the Court may also examine the debtor's *current* general ability to pay the obligation if the debtor's circumstances have changed so much from the time the agreement was made so that

paying the support is inequitable. *Id.* at 1110 n. 11.

In this case, at the time the debtor's support obligation was to begin, July 1, 1986, the debtor had finished his surgical residency and had begun practicing surgical medicine as a fully qualified doctor. *See* Stipulation of Facts at ¶ 6. Testimony has shown that the debtor's first job immediately following residency was to pay him $40.00 per hour for 40 hours per week, making a total annual income of $83,200.00. *See* Plaintiff's Pretrial Brief at 8. The amount of support to the plaintiff was $25,000.00 annually, leaving the debtor with $58,200.00 in gross income with which to pay taxes, living expenses and maintenance and support for the children during the school year. The debtor testified that he did not stay a full year at his post-residency job; however, the Court's examination is *limited* to whether the obligation was manifestly unreasonable in view of the debtor's present and foreseeable ability to pay based on his earning power. *Calhoun,* 715 F.2d at 1110. At the time the debtor became obligated for this debt, he clearly had the ability to pay the alimony out of his present and expected salary of $83,200.00.[8] His foreseeable ability to pay, at that time, was even greater since he possessed a medical license and could have expected his salary to increase with experience. The debtor testified in Court that when the agreement was made, he felt it was reasonable. He also testified that he had an attorney who advised him of his options and the current New York state law, including a recent case which had awarded a nondebtor spouse a large percentage of her husband's income. Although the result of that case may have influenced the debtor, he was represented by counsel and made the decision to settle, rather than risk a higher award of support as has been shown was possible under New York state law. Therefore, the amount agreed to for support was not manifestly unreasonable at the time the agreement was entered.

This Court must now analyze the debtor's *current* general ability to pay to determine if his circumstances have changed so much that continuing payment would be inequitable. The debtor is in a present contract with Lewisburg Community Hospital in Tennessee to provide medical services as a general surgeon. *See* Plaintiff's Exh. 4. The debtor entered the contract on March 18, 1991, for a period of four years. Under the contract, the debtor was guaranteed a gross salary of $170,000.00 for eighteen months, thereby making monthly income of approximately $9,444.00. *See* Plaintiff's Exh. 4 at § 3.1. The hospital also agreed to reimburse the debtor for "office overhead" up to $8,800.00 per month for the first twelve months. *See* Plaintiff's Exh. 4 at § 2.2.

The debtor's 1991 W-2 tax form shows an income of $65,025.00. However, Schedule I in the debtor's Chapter 7 bankruptcy petition shows that his current gross monthly income is only $3,540.00 (or $42,480.00 annually). Nevertheless, the debtor's accountant testified that the difference is because personal expenses were paid by the debtor's corporation and added later as income in 1991. Federal income, social security, and medicare taxes in the amount of $7,638.74 were withheld from the gross income shown on the W-2 form. *See* Plaintiff's Exh. 7. In addition, according to Schedule J, the debtor has current monthly expenses totalling $4,617.33, which include $2,534.00 for necessary living expenses and $2,083.33 for alimony. Therefore, based on the debtor's reported 1991 income, after taxes and expenses are subtracted, he is left an approximate extra $1,978.30 annually (or $164.86 monthly).

In addition, the plaintiff has produced proof that the debtor's income in 1991 may have been even greater than the $65,025.00 reported. Actual deposits of the professional corporation were $98,232.00 during May through December, 1991. *See* Plaintiff's Exh. 6. Also, the plaintiff's summary of the 1991 disbursements journal shows salary, cash withdrawals and personal ex-

---

**8.** No testimony or evidence was introduced regarding the monthly expenses the debtor had during 1986.

**845**

penses totalling approximately $65,000.00 for just the last eight months of 1991. *See* Plaintiff's Exh. 6. Finally, the debtor's wife, who works as his secretary, paid by his professional corporation, also has a gross income of $800.00 monthly, with a net pay of $660.00 monthly. *See* Schedule I.

Therefore, based on the debtor's current earnings, along with those of his wife, this Court finds that the payment of the plaintiff's support is not manifestly unreasonable or inequitable. The Court notes the debtor has testified that his practice has slowed down and he soon will have received all of his guaranteed salary; however, he has presented no other proof as to a lack of need of medical services in Lewisburg, Tennessee nor adequate proof as to why he has not in the past or cannot now move to a larger city with more need for medical services once his contract has expired. There is no proof that Dr. Frisbee has reached his full earning potential. (If his 1991 W-2 reported income is correct, he is currently earning less than he was in his first job out of residency.) In addition, he will be even more able in the future to pay the continuing debt because his debts to other hospitals should be discharged in this bankruptcy.[9]

In summary, the debtor has the ability to pay the continuing support to the plaintiff, and the amount agreed to is not manifestly unreasonable.

### 4. REASONABLE LIMITS ON NON-DISCHARGEABILITY

Since this Court has found that the amount of support is *not* so excessive as to be manifestly unreasonable, its inquiries stop there, and the continuing obligation of the debtor is determined to be nondischargeable. Therefore, the fourth part of the dischargeability test, setting a reasonable limit on the nondischargeability of the debt, is not necessary in this case. *In re Calhoun*, 715 F.2d at 1110.

**9.** There are no pending complaints concerning the discharge of any obligations other than this

### CONCLUSION

In summary, this Court determines that the continuing obligation of the debtor to pay the plaintiff the sum of $25,000.00 annually or 25% of his net annual income, whichever is greater, is nondischargeable. 11 U.S.C. § 523(a)(5). The debt is: (1) intended to create a support obligation; (2) has the effect of providing necessary support; and (3) is not so excessive as to be manifestly unreasonable.

IT IS THEREFORE ORDERED that on the complaint of the plaintiff, Margaret M. Frisbee, requesting a determination of dischargeability, this Court finds and concludes that the debtor's continuing obligation to the plaintiff, under the separation agreement of October 1, 1984, and the divorce judgment of May 19, 1987, is "actually in the nature of alimony, maintenance, or support" and is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

SO ORDERED.