**In re David Steven KRISS, Debtor.**

**Roberta WALLER, Plaintiff,**

**v.**

**David Steven KRISS, Defendant.**

**Bankruptcy No. 96 B 42499(JLG).**
**Adversary No. 97/8955A.**

United States Bankruptcy Court,
S.D. New York.

Feb. 26, 1998.

Jaspan Schlesinger, Silverman & Hoffman L.L.P., Garden City, NY, for Roberta Waller.

Andrew J. Wigler, Great Neck, NY, for Debtor.

*MEMORANDUM DECISION ON ROBER-TA WALLER'S MOTION FOR PAR-TIAL SUMMARY JUDGMENT, AB-STENTION AND SANCTIONS*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Roberta Waller ("Waller") seeks (i) partial summary judgment against David Steven Kriss ("debtor") declaring that Waller's claims against him arising under a settlement agreement are nondischargeable child support obligations pursuant to § 523(a)(5) of the Bankruptcy Code, (ii) an order pursuant to 28 U.S.C. § 1334(c)(1) abstaining from hearing that portion of this adversary proceeding pertaining to the quantification of debtor's pre-petition child support arrears, (iii) an order pursuant to § 362(d) of the Bankruptcy Code modifying the automatic stay to allow Waller to enforce her claims against debtor for pre-petition and post-petition child support arrears, and (iv) an order pursuant to Fed.R.Bankr.P. 9011, 28 U.S.C. § 1927 and/or § 105 of the Bankruptcy Code imposing sanctions on debtor and his counsel,

Andrew J. Wigler, Esq. Debtor and Wigler oppose the motion. We grant the motion, except that we deny Waller's request that we sanction Wigler and, pending an evidentiary hearing, we deny Waller's request for sanctions against debtor.

### Facts

Unless otherwise stated, the facts are not in dispute. Debtor filed a petition under chapter 7 of the Bankruptcy Code on May 8, 1996. Waller and debtor married on April 12, 1979. In or about 1989, Waller commenced an action in New York State Supreme Court, Nassau County (the "State Court") to divorce debtor (the "Matrimonial Action"). The parties settled that action pursuant to a Stipulation of Settlement dated September 7, 1990 (the "Stipulation"). In part, the Stipulation provides:

> The parties acknowledge that they have been advised of the provisions of Domestic Relations Law § 240(1–b), a statutory provision commonly known as the Child Support Standards Act. The parties acknowledge that they have reviewed the provisions of said statute, understand them, and have had a full opportunity to discuss them with counsel. The parties further understand that in the absence of this Stipulation between them, the provisions of the Child Support Standards Act would govern the determination of the amount of the child support obligation to be paid by the non-custodial parent to the custodial parent. Notwithstanding said statutory provisions, the parties wish to enter into the Stipulation relative to child support, and hereby waive application of the provisions of the Child Support Standards Act.

> The Husband shall pay to the Wife, during his lifetime, as and for child support for the unemancipated children of the parties ... the sum of $541.67 each month, or an aggregate sum of $1,083.34 per month on the first day of each and every month, which payments shall commence on the first day of the month immediately following the execution of this Stipulation and continue thereafter until the emancipation of each of the children, as hereinafter defined in Article IX of this Agreement.

> Child support shall be pro-rated for any period of time predating the first monthly payment.

> The Husband agrees that he shall continue to maintain in full force and effect his present medical and all health related insurance for the benefit of the children, including but not limited to Blue Cross/Blue Shield and major medical, until their emancipation as defined herein, and shall execute an authorization simultaneously with the execution of this Stipulation to the insurance carrier to provide to the Wife duplicate premium notices and notices of any default ...

Stipulation, Article VIII(1–3). The State Court incorporated, but did not merge, the Stipulation's terms into its Judgment of Divorce (the "Divorce Judgment"):

> the defendant shall pay to the plaintiff, *as and for the support and maintenance of the parties' infant children*, by check or money order drawn to her order and forwarded on the first day of each month, to the plaintiff at her residence or at such other place as she may designate in writing, *the sum of $541.67 per month per child, or an aggregate sum of $1,083.34 per month*, all as more specifically set forth in the parties' stipulation of settlement dated September 7, 1990, a copy of which is on file with the Court and incorporated but not merged in this judgment by reference.....

Divorce Judgment p. 4 (emphasis added).

Debtor has consistently defaulted on his child support obligations under Article VIII of the Stipulation. In 1992, Waller commenced a proceeding in the State Court to hold debtor in contempt and to obtain a money judgment for unpaid child support through August 1992. Debtor settled that proceeding by stipulating to a $72,627.74 judgment in Waller's favor. He received a $12,000 credit against that judgment, and on or about June 4, 1992, executed a confession of judgment in the sum of $60,627.74 (the "1992 Confession of Judgment"), "[f]or unpaid child support, medical expenses and counsel fees, all as more specifically provided in the stipulation between the parties entered into ... before [the State Court]." The un-

paid principal portion of that judgment is $60,627.74.

Subsequent to August 1992, debtor again defaulted on his child support obligations and Waller commenced a second enforcement action. Debtor agreed to resolve that dispute by modifying the Stipulation to acknowledge, among other things, arrearages under the Stipulation for the period August 1992 through September 1993 totaling $35,411.27. On or about September 21, 1993, debtor executed a Modification of Stipulation (the "Modification Agreement") which, among other things, incorporated those changes, as follows:

> Article VIII of the Stipulation is hereby reaffirmed by the parties. However, the plaintiff agrees to temporarily accept the sum of $750 per month as and for child support for the unemancipated children of the parties ... on account of the sum of $1,083.34 per month, as set forth in Article VIII(2) of the Stipulation....
>
> \* \* \* \* \* \*
>
> In addition to the current child support payments in the sum of $750 per month ... the defendant hereby assigns and transfers to the plaintiff one-third (1/3) of any and all gross commissions, salaries, payments, cash, loans or monies due him from whatever source....

Modification Agreement ¶¶ 7 and 8. On or about November 15, 1993, debtor executed a confession of judgment in the sum of $35,411.27 (the "1993 Confession of Judgment"), "[f]or unpaid child support, medical expenses and counsel fees, all as more specifically provided in the [Modification Agreement] between the parties entered into ... before the [State Court]." Debtor has made only two child support payments since September 1993.

In her complaint (the "Complaint"), Waller contends that for the period from October 1993 through December 1996, debtor's arrearages on his child support obligations under Article VIII of the Stipulation, as modified, total $41,166.92. Complaint ¶ 28. She asserts that as of December 1996, debtor's child support arrearages total in excess of $125,000, inclusive of the $96,039.91 debtor

owed as of September 1993, but net of amounts obtained from debtor's employers through income executions. *Id.* ¶¶ 29 and 30. She also alleges that debtor has not made any payments towards their children's medical expenses as mandated by Article VIII of the Stipulation, as amended, and that his indebtedness thereunder exceeds $290,000. *Id.* ¶¶ 31 and 32.

Debtor listed Waller in the schedules he filed with his chapter 7 petition as an unsecured creditor holding a fixed and liquidated claim of "approximately $100,000." Waller is listed in Schedule E as having a $50,000.00 priority unsecured claim, and is listed in Schedule F as having a $50,000.00 non-priority unsecured claim. On or about October 23, 1996, Waller moved for an order pursuant to Fed.R.Bankr.P. 4004(b) and 4007(c) extending her time to object to the dischargeability of her claim under § 523 of the Bankruptcy Code, and debtor's discharge under § 727 of the Bankruptcy Code. Although debtor opposed that motion, he acknowledged owing approximately $100,000 in child support payments and that those child support payments must be paid and are not dischargeable in bankruptcy. *See* Response to Roberta Waller's Motion for an Order Extending Time within which to File Objections to the Dischargeability of Debt and Discharge of the Debtor, dated November 14, 1996 ¶¶ 9 and 12 (footnote omitted). At the hearing on Waller's motion, debtor, through prior counsel, reiterated that Waller's claim for unpaid child support payments is nondischargeable. Transcript of Nov. 20, 1996 hearing 10:10–13. However, he disputed Waller's calculation of the child support arrears and requested an accounting.

We granted Waller's motion, and thereafter, on the consent of the parties, we appointed Ira L. Herman, Esq., as mediator to assist the parties in quantifying the amount of debtor's pre-petition child support arrears. Mr. Herman conducted the mediation over a six month period. It consisted of four mediation sessions and numerous telephone conferences among the parties and their counsel. In his Final Report dated November 21, 1997, Mr. Herman advised that the mediation was not successful and that debtor had

"failed to participate in the mediation in good faith." Final Report ¶ 5.

In the Complaint, Waller seeks a judgment declaring that debtor's child support obligations under Article VIII of the Stipulation, as modified, and the Divorce Judgment, are non-dischargeable under §§ 523(a)(5) and (15) of the Bankruptcy Code. *See* Complaint ¶¶ 33–35. On or about October 14, 1997, Debtor interposed an answer to the Complaint in which he denied plaintiff's assertion that his debts and obligations to plaintiff, arising out of the Matrimonial Action and under the Stipulation, constitute non-dischargeable child support. On or about November 7, 1997, he amended his answer (the "Amended Answer") to deny that his indebtedness to Waller constitutes non-dischargeable child support obligations and to assert four affirmative defenses to the Complaint.[1] On or about January 28, 1998, debtor filed his Second Amended Answer to the Complaint. It is identical to the Amended Answer except that debtor withdrew his first affirmative defense. Accordingly, he no longer contends that the $96,039.01 indebtedness evidenced by the 1992 and 1993 Confessions of Judgment is dischargeable under the Bankruptcy Code.

### Discussion

We have subject matter jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B), (J) and (O).

### Request For Partial Summary Judgment

Fed.R.Civ.P. 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). A fact is "material" only if it will affect the outcome of a lawsuit under applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable finder of fact court return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Rovtar v. Union Bank of Switzerland*, 852 F.Supp. 180, 182 (S.D.N.Y.1994). In assessing the merits of a summary judgment motion, we must view the record in the light most favorable to the non-moving party. *See, e.g., Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir.1989). We must determine " '[w]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir.1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251–52, 106 S.Ct. at 2512); *see also Heyman v. Commerce Industry Insur. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975) ("on a motion for summary judgment the court cannot try issues to be tried"). The movant must establish the

---

**1.** In relevant part, the Amended Answer reads, as follows:

*As And For A First Affirmative Defense*
Those certain judgments in favor of plaintiff, over and against defendant, include as parts thereof, sums which are properly dischargeable by the defendant-debtor in this proceeding.

*As And For A Second Affirmative Defense*
The plaintiff has not complied with various "conditions precedent" to various obligations of the defendant-debtor under the parties' September 7, 1990 Stipulation of Settlement and September 21, 1990 Judgment Of Divorce (said "conditions precedent" contained therein), thereby precluding plaintiff's claims, thus making the subject debt properly dischargeable.

*As And For A Third Affirmative Defense*
The parties' September 7, 1990 Stipulation Of Settlement and September 21, 1990 Judgment Of Divorce fails to comply with New York State Law as same pertains to Child Support, making the child support provisions of said Stipulation Of Settlement and Judgment of Divorce unenforceable, and thus the subject debt properly dischargeable.

*As And For A Fourth Affirmative Defense*
In the alternative, any non-dischargeable obligations of the Debtor pursuant to the parties' September 7, 1990 Stipulation Of Settlement and September 21, 1990 Judgment Of Divorce are "excessive," and are thus properly dischargeable.
Amended Answer ¶¶ 4–7.

absence of an issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

Waller contends that she is entitled to partial summary judgment declaring that all sums payable prepetition under Article VIII of the Stipulation, as amended, and the Divorce Judgment (the "Article VIII Obligations") are non-dischargeable child support payments under § 523(a)(5) because, debtor so stipulated during the November 20, 1996 hearing and because as a matter of bankruptcy law they constitute non-dischargeable child support obligations. Section 523(a)(5) states:

> A discharge under section 727 ... of [the Bankruptcy Code] does not discharge an individual debtor from any debt—

> \* \* \* \* \* \*

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that— .

>> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which as been assigned to the Federal Government or to a State or any political subdivision of such State); or

>> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support. . . .

11 U.S.C. § 523(a)(5).

Debtor concedes that the $96,039.01 in debt evidenced by the 1992 and 1993 Confessions of Judgments constitutes an Article VIII Obligation and is non-dischargeable under § 523(a)(5). He denies having other unpaid Article VIII Obligations, or stipulating that any such obligations are non-dischargeable, and contends that to the extent he has those kinds of obligations, they do not constitute child support as a matter of state law, and are therefore dischargeable under the balancing test set forth in § 523(a)(15).[2] Finally, debtor contends that, in any event, we should not grant Waller summary judgment as to her claim for allegedly unpaid medical expenses because Waller is in breach of the Stipulation, as amended, because she has not satisfied certain conditions precedent to her right to recover those expenses.

 A stipulation is a judicial admission that is binding upon the parties absent special considerations. *See John McShain, Inc. v. United States,* 179 Ct.Cl. 632, 375 F.2d 829, 831 (1967); *Lyles v. American Hoist & Derrick Company,* 614 F.2d 691, 694 (10th Cir.1980). Accordingly, stipulations between attorneys in open court or at trial cannot be disregarded or set aside at will. *See Orsini v. Kugel,* 9 F.3d 1042, 1044 (2d Cir.1993); *Twohy v. First National Bank of Chicago,* 758 F.2d 1185, 1189 (7th Cir.1985); *Lyles,* 614 F.2d at 694; *United States v. Northern Colorado Water Conservancy District,* 608 F.2d 422, 431 (10th Cir.1979); *Kreidle v. Department of the Treasury (In re Kreidle),* 145 B.R. 1007, 1013 (Bankr.D.Colo.1992). However, a court is not always bound by a stipulation among parties. For example, we are not bound to accept stipulations regard-

**2.** That section provides that a discharge under § 727 does not discharge an individual debtor from any debt:

not of the kind described in paragraph (5) that is incurred as by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
(A) the debtor does not have the ability to pay such debt from income or property of the

debtor not reasonably necessary to be \*\*\* expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
(B). discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor. . . .
11 U.S.C. § 523(a)(15).

ing questions of law. *See Estate of Sanford v. Commissioner of Internal Revenue*, 308 U.S. 39, 51, 60 S.Ct. 51, 59, 84 L.Ed. 20 (1939). Moreover, the parties cannot create a case by stipulating to facts that do not exist. *See PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir.1984). We may also disregard a stipulation if it would be manifestly unjust to enforce it. *Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir.1990).

Contrary to Waller's assertion, debtor did not stipulate on the record or otherwise that all Article VIII Obligations are non-dischargeable under § 523(a)(5) of the Bankruptcy Code. He agreed only that his $96,-039.01 indebtedness to Waller evidenced by the 1992 and 1993 Confessions of Judgment that he listed in his chapter 7 petition is non-dischargeable. Although debtor advocated a contrary position in his Amended Answer, he abandoned that position in his Second Amended Answer. Throughout the proceedings on this motion, debtor has acknowledged that the indebtedness constitutes an Article VIII Obligation that is non-dischargeable under § 523(a)(5) of the Bankruptcy Code.

New York Domestic Relations Law § 240(1–b)(h) states as follows:

A validly executed agreement or stipulation voluntarily entered into between the parties after the effective date of this subdivision presented to the court for incorporation in an order or judgment shall include a provision stating that the parties have been advised of the provisions of this subdivision, and that the basic child support obligation provided for therein would presumptively result in the correct amount of child support to be awarded. In the event that such agreement or stipulation deviates from the basic child support obligations, the agreement or stipulation must specify the amount that such basic child support obligation would have been and the reason or reasons that such agreement or stipulation does not provide for payment of that amount. Such provision may not be waived by either party or counsel. Nothing contained in this subdivision shall be construed to alter the rights of the parties to voluntarily enter into validly executed agreements or stipulations which deviate from the basic child support obligation provided such agreements or stipulations comply with the provisions of this paragraph. The court shall, however, retain discretion with respect to child support pursuant to this section. Any court order or judgment incorporating a validly executed agreement or stipulation which deviates from the basic child support obligation shall set forth the court's reasons for such deviation.

N.Y.Dom.Rel.L. § 240(1–b)(h) (McKinney 1997 Supp.). Debtor contends that any other unpaid Article VIII Obligations are not child support, since the Stipulation, as amended, does not comply with § 240(1–b)(h) because it does not contain:

(a) a calculation reflecting what the amount of monthly child support would have been if the formula continued in the NYS Child Support Standard Act had been followed by the parties (the "basic child support obligation");

(b) a statement that the basic child support obligation presumptively results in the correct amount of child support to be awarded;

(c) a statement as to whether the parties have agreed to deviate from the basic child support obligation; and

(d) a recitation of the reasons the parties deviated from the basic child support obligation, if they opted to do so.

■ Waller disputes debtor's state law analysis and contends that he is relying on the wrong version of § 240(1–b)(h). She also argues that, in any event, all unpaid Article VIII Obligations are non-dischargeable under federal law. Waller is correct that the version of § 240(1–b)(h) that debtor relies on became effective in 1992 after the parties executed the Stipulation and the State Court entered the Divorce Judgment. The statutory amendments implementing that change to § 240(1–b)(h) do not have retroactive effect. *See Sloam v. Sloam*, 185 A.D.2d 808, 809, 586 N.Y.S.2d 651 (N.Y.A.D.1992). The version of § 240(1–b)(h) in effect when the parties executed the Stipulation and the State Court entered the Divorce Judgment in 1990 required only that the order or judgment include a provision stating that the parties had

been advised of the provisions of the subdivision. It read, as follows:

A validly executed agreement or stipulation voluntarily entered into between the parties after the effective date of this subdivision presented to the court for incorporation in an order or judgment shall include a provision stating that the parties have been advised of the provisions of this subdivision. Such provision may not be waived by either party or counsel. Nothing contained in this subdivision shall be construed to alter the rights of the parties to voluntarily enter into validly executed agreements or stipulations. The child support standards established by this subdivision shall not be applicable to such agreements or stipulations when executed. The court shall, however, retain discretion with respect to child support pursuant to this section.

N.Y.Dom.Rel.L. § 240(1–b)(h) (McKinney 1990 Supp.); *see also* N.Y.Dom.Rel.Law, Supplementary Practice Commentary p. 148 (McKinney 1997) ("The 1992 [amendment] stiffens prior law by engrafting a requirement that the parties must set forth in their agreement what the CSSA result would have been and the reasons why they agreed not to employ that result. Under prior law, it was sufficient just to state that the parties had been advised of the CSSA by their counsel.") The Stipulation and the Divorce Judgment comply with that version of § 240(1–b)(h).

Alternatively, debtor argues that the Modification Agreement does not comply with § 240(1–b)(i) of the New York Domestic Relations Law because he was not represented by counsel hen he negotiated and executed that agreement and Waller did not provide him with a copy of a certain child support standards chart.

Section 240(1–b)(i) states, as follows:

Where either or both parties are unrepresented, the court shall not enter an order or judgment other than a temporary order pursuant to section two hundred thirty-seven of this article, that includes a provision for child support unless the unrepresented party or parties have received a copy of the child support standards chart promulgated by the commissioner of social services pursuant to subdivision two of section one hundred eleven-i of the social services law. Where either party is in receipt of child support enforcement services through the local social services district, the local social services district child support enforcement unit shall advise such party of the amount derived from application of the child support percentage and that such amount serves as a starting point for the determination of the child support award, and shall provide such party with a copy of the child support standards chart. In no instance shall the court approve any voluntary support agreement or compromise that includes an amount for child support less than twenty-five dollars per month.

N.Y.Dom.Rel.Law § 240(1–b)(i) (McKinney 1997). Waller concedes that she did not provide debtor with a copy of the child support standards chart. However, she contends that the law firm of Rudes, Lax, Berkowitz & Mittman ("Rudes Lax") represented debtor prior to, during and after he executed the Modification Agreement. As support, she submitted correspondence from her counsel to various attorneys at Rudes Lax referencing the Matrimonial Action and a copy of the Modification Agreement which shows that George Lax of the law firm notarized the signature. She also submitted correspondence from Kriss on which he copies Mr. Lax. We will not and need not resolve this dispute in the context of this motion. In 1990, the statute read as it does now. N.Y.Dom.Rel.Law § 240(1–b)(i) (McKinney 1990). Debtor does not dispute that he was represented by counsel when he executed the Stipulation and the State Court entered the Divorce Judgment.

Debtor cites *Vernon v. Vernon*, 239 A.D.2d 108, 656 N.Y.S.2d 634 (N.Y.A.D.1997), as support for his assertion that Waller's alleged failure to comply with state law in drafting and executing the Modification Agreement renders the Stipulation, as amended, unenforceable, and means that all unpaid Article VIII Obligations, other than the $96,039.01, are dischargeable under the Bankruptcy Code. In that case, a husband and wife entered into a child support agreement calling

for, among other things, the husband to pay child care and medical care expenses. The wife moved to increase the husband's payments under the agreement. In response to this motion, the trial court invalidated that portion of the agreement pertaining to child care and medical care expenses because it violated § 240(1–b)(h) since it did not state what the husband's obligations for those expenses would have been under the Child Support Standards Act ("CSSA"). *Id.* The trial court referred the matter to a Judicial Hearing Officer to determine if an increase in these expenses was warranted. *Id.* On appeal, the Supreme Court, Appellate Division, affirmed. It found that the agreement did not comply with § 240(1–b)(h) since it did not "state what the husband's obligation for child care and medical care costs would be under the CSSA, or why such a calculation was not made, or whether the parties were advised of their rights under the CSSA for a separate accounting of such costs." *Id.* However, the court held that the defect did not invalidate the entire agreement. *Id.*

Debtor concedes that as drafted and executed, the Stipulation complies with, and is enforceable under, state law. As noted, the amendments to § 240(1–b)(h) do not have retroactive effect. Thus, even assuming, *arguendo,* that the Modification Agreement is defective either because it does not comply with §§ 240(1–b)(h) or (i) of the N.Y. Domestic Relations Law, the Stipulation and the Divorce Judgment are valid, effective and enforceable under state law. *See Cefola v. Cefola,* 231 A.D.2d 600, 601, 647 N.Y.S.2d 810 (N.Y.A.D.1996) (absent retroactive effect of statute, new statute does not invalidate separation agreements entered into prior to enactment); *Sloam,* 185 A.D.2d at 810, 586 N.Y.S.2d 651 (same). Accordingly, *Vernon* is inapposite.

In relevant part, the Stipulation states that

With respect to any payments for medical or prescription drugs which are advanced by the Wife on behalf of the children, the Husband shall reimburse the Wife for such payments within five (5) days of presentment by the Wife for such payments within five (5) days of presentment by the Wife to the Husband of the

bills or invoices evidencing the payment of said expenses. The Husband agrees that the Wife shall not have to wait to be reimbursed until such time as the Husband received payment from his insurance carrier. The Wife agrees that she shall cooperate in completing and executing all necessary documents in order to facilitate payment by the insurance carrier to the Husband. The Husband shall execute a consent to the insurance carrier to furnish such notices of premium due and defaults to the Wife as provided in Paragraph "3" of this Article. In the event that Husband shall fail to do so, he shall be liable for the payment of all medical expenses incurred by the children.

Stipulation Article VIII(4). Debtor contends that Waller must satisfy the following conditions before he is liable under the Stipulation to reimburse her for their children's medical expenses:

(i) Waller must pay the medical expenses for which she is seeking reimbursement;

(ii) Waller must provide debtor with the bills and invoices evidencing the payment of those expenses so that he can submit them to the appropriate insurer; and

(iii) Waller must cooperate in completing and executing all documents necessary to facilitate the payment of the medical expenses.

■ Debtor contends that Waller has not alleged, let alone proved, that she complied with those conditions, and that she has not done so. Thus, he contends that we should not characterize those obligations as non-dischargeable child support and that Waller is not entitled to summary judgment as to the $290,000 in allegedly unpaid medical expenses. We disagree. Whether Waller satisfied the alleged conditions precedent to repayment of medical expenses under Article VIII(4) may effect her right to reimbursement of her children's medical expenses under the Stipulation, and thus the size of her claim against debtor. It does not alter the nature of the liability or whether it is dischargeable in bankruptcy.

■ Whether the Article VIII Obligations constitute child support under state

law does not determine Waller's right to summary judgment. Federal bankruptcy law dictates whether an obligation constitutes non-dischargeable child support under § 523(a)(5). *See Strickland v. Shannon (In re Strickland),* 90 F.3d 444, 446 (11th Cir. 1996) ("Because federal law, rather than state law, controls our inquiry, a domestic obligation can be deemed actually in the nature of support under § 523(a)(5) even if it is not considered 'support' under state law"); *accord Friedkin v. Sternberg (In re Sternberg),* 85 F.3d 1400, 1405 (9th Cir. 1996); *In re Harrell,* 754 F.2d 902, 904–05 (11th Cir.1985); *Petoske v. Petoske (In re Petoske),* 16 B.R. 412, 413 (Bankr.E.D.N.Y. 1982). That section requires us to determine whether the "support" label accurately reflects that the subject obligation is "actually in the nature of alimony, maintenance, or support." *Strickland,* 90 F.3d at 446. "The statutory language suggests a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the nature of support." *Id.* (citing *Harrell,* 754 F.2d at 906). The parties' intent when they executed Settlement is dispositive in determining whether debtor's obligation is in the nature of support. *Sternberg,* 85 F.3d at 1405; *accord In re Sampson,* 997 F.2d 717, 723 (10th Cir. 1993) ("the critical inquiry is the shared intent of the parties at the time the obligation arose"); *In re Combs,* 101 B.R. 609, 615 (9th Cir. BAP 1989) ("the court must ascertain the intention of the parties at the time they entered in their stipulation agreement"); *Frisbee v. Frisbee (In re Frisbee),* 144 B.R. 839, 840 (Bankr.W.D.Tenn.1992) (the court must inquire into whether the state court or the parties intended to create a support obligation).

 Article VIII of the Stipulation is entitled "Child Support". It speaks of "child support for the [parties'] unemancipated children" and is clear that those obligations continue "until the emancipation of each of the children." Stipulation Article VIII(2). Likewise, it mandates that the debtor "maintain in full force and effect his present medical and all health related insurance for the benefit of the children ... until their emancipation ...". *Id.* The Divorce Judgment speaks in terms of "payments for the support and maintenance of the parties' infant children." Significantly, debtor does not dispute that the amounts payable under Article VIII are in the nature of child support and that he and Waller intended that the payments be treated as anything other than child support. We find that the Article VIII Obligations are child support payments for purposes of § 523(a)(5).

Thus, Waller is entitled to summary judgment that all unpaid Article VIII Obligations, if any, constitute non-dischargeable child support under § 523(a)(5) of the Bankruptcy Code.

*Request for Discretionary Abstention and Stay Relief*

Waller contends that because the State Court is in the best position to liquidate her child support claim, we should abstain from doing so pursuant to 28 U.S.C. § 1334(c) and grant her relief from that automatic stay to permit her to enforce debtor's unpaid pre and postpetition child support obligations in the State Court. Debtor disputes that assertion and contends that we are in a better position than the State Court to liquidate the child support claim because we are more familiar with the relevant facts and circumstances than the State Court judge to whom the matter likely would be assigned. He argues that it would be a waste of judicial resources and his allegedly limited funds with which to employ counsel to cause the parties to "start over again" in the State Court. He contends that calculating the amount of child support should non consume much of our time, particularly given his concession that the liquidated judgments are non-dischargeable. Apparently, in August of 1997 Waller commenced and then discontinued an action in Nassau County Family Court to collect debtor's alleged postpetition child support arrears. Debtor asserts that by voluntarily withdrawing that action in favor of this adversary proceeding, Waller waived her right to argue that we should abstain from calculating the amount of non-dischargeable child support herein.

 In relevant part, § 1334 provides as follows:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or with respect for state law, from abstaining from hearing a particular proceeding arising under Title 11 or arising in or relating to a case under Title 11.

*See* 28 U.S.C. § 1334(c)(1). Debtor cites no support for his waiver argument and we know of none. In assessing the merits of an abstention motion, our primary concern is whether federal bankruptcy objectives will be properly served if we concede our jurisdiction. *See Slater v. Town of Albion (In re Albion Disposal, Inc.),* 217 B.R. 394, 412 (W.D.N.Y.1997); *Muir v. Long Island Realty Funding Corp. (In re Muir),* 107 B.R. 13, 17 (Bankr.E.D.N.Y.1989); *In re Texaco, Inc.,* 77 B.R. 433, 438 (Bankr.S.D.N.Y.1987).

We consider the following factors in determining whether to remand this matter to the State Court: (1) the effect on the efficient administration of the estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the defendants. *See In re 183 Lorraine Street Associates,* 198 B.R. 16, 32 (E.D.N.Y.1996); *Drexel Burnham Lambert Group, Inc. v. Vigilant Insurance Co.,* 130 B.R. 405, 407 (S.D.N.Y.1991).

It is appropriate for us to abstain from calculating the amount of debtor's unpaid Article VIII Obligations, if any. The State Court and particularly Justice Gabriel S. Kohn, are wholly familiar with the operative documents and agreements associated with the Matrimonial Action. Justice Kohn has conducted at least one hearing in connection with Waller's attempts to enforce debtor's child support obligations. The quantification of debtor's unpaid Article VIII Obligations, if any, does not implicate our special expertise, but rather, invokes the application of state law and the interpretation of documents and agreements over which the State Court has already exercised its jurisdiction. Allowing the State Court to quantify debtor's Article VIII Obligations will not impede the efficient administration of this estate.

Section 362(d) of the Bankruptcy Code provides in relevant part as follows:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest ...

11 U.S.C. § 362(d)(1). "[W]hen requested, relief [from the automatic stay] should be liberally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court." *Carver v. Carver,* 954 F.2d 1573, 1578 (11th Cir.) (citing *In re White,* 851 F.2d 170, 173 (6th Cir.1988); *In re MacDonald,* 755 F.2d 715 (9th Cir.1985)), *cert. denied,* 506 U.S. 986, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992); *see also Caswell v. Lang,* 757 F.2d 608, 610 (4th Cir. 1985); *McCray v. McCray,* 62 B.R. 11 (Bankr.D.Colo.1986). Having determined that any unpaid Article VIII Obligations are non-dischargeable, and that we should abstain from calculating the amount of those obligations, it follows that we will grant Waller stay relief and allow her to commence appropriate proceedings in State Court to liquidate and satisfy her claim for unpaid child support.

*Request For Sanctions*

Waller contends that we should sanction debtor and Wigler pursuant to Bankruptcy Rule 9011, 28 U.S.C. § 1927 and/or § 105 of the Bankruptcy Code, for filing the Amended Answer because neither the answer nor the affirmative defenses contained therein are grounded in fact or warranted by existing law or a good faith argument for the extension or modification thereof. She notes particularly that debtor's First Affirmative Defense is frivolous given his prior counsel's agreement that the $96,039.01 indebtedness is non-dischargeable. She also asserts that we should sanction Wigler under § 1927 be-

cause by imposing the Amended Answer he has unreasonably and vexatiously multiplied these proceedings. Finally, she contends that we should sanction debtor under § 105 for his alleged refusal to provide truthful and candid answers during his Bankruptcy Rule 2004 examination and his alleged bad faith participation in the court order mediation. She contends that we should impose a monetary sanction on debtor and Wigler of no less that $25,000 and that we should conduct an evidentiary hearing to fix the sanctions.

■ Under 28 U.S.C. § 1927, we can require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" to satisfy personally the excess costs, expenses and attorneys' fees incurred as a result. *See* 28 U.S.C. § 1927. "The fees awarded under this section are limited to those expenses reasonably incurred to meet the other party's groundless bad faith procedural moves." *In re Usoskin,* 61 B.R. 869 (Bankr.E.D.N.Y.1986) (citing *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1089 (2d Cir.1977)). In *Baker v. Latham Sparrowbush Associates (In re Cohoes Industrial Terminal, Inc.),* 931 F.2d 222 (2d Cir.1991), our court of appeals held that "[a] bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that '[a]n attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay.'" *Id.* at 230 quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986), *cert. denied sub nom. County of Suffolk v. Graseck,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *see also In re French Bourekas, Inc.,* 175 B.R. 517, 523–24 (Bankr.S.D.N.Y.1994), *aff'd,* 195 B.R. 19 (S.D.N.Y.1996); *In re Wonder Corp. of America,* 109 B.R. 18, 27–28 n. 11 (Bankr. D.Conn.1989). The court must find that an attorney's conduct was motivated by an improper purpose, such as harassment or delay, and is entirely meritless. *Id.* at 28.

■ We can impose sanctions against parties or counsel for misconduct during the course of a case under 11 U.S.C. § 105(a). *See Burd v. Walters (In re Walters),* 868 F.2d 665, 669 (4th Cir.1989) (bankruptcy court had the ability to sanction debtor's

attorney for contempt pursuant to § 105(a), because § 105(a) provides the bankruptcy court with the power to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code); *French Bourekas,* 175 B.R. at 524 (bankruptcy court has the power to impose sanctions pursuant to § 105(a)); *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980) (when there has been willful abuse of judicial process, a federal court may exercise its inherent power to assess attorneys' fees against counsel); *Cosmopolitan Aviation Corp. v. New York State Department of Transportation (In re Cosmopolitan Aviation Corp.),* 763 F.2d 507, 517 (2d Cir.) (same), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985).

Historically, Bankruptcy Rule 9011 has tracked the language of Fed.R.Civ.P. 11. In 1993, Rule 11 was amended and Bankruptcy Rule 9011 was not. Rule 9011 was amended extensively in 1997 to conform with the 1993 amendments to Fed.R.Civ.P. 11. *See* 10 Collier on Bankruptcy ¶ 9011.RH[4] at p. 9011–38 (15th ed. rev.1997). In interpreting Rule 9011 during the period of non-conformity, courts were nevertheless instructed by cases decided under Rule 11. *See, e.g., Klein v. Ulster Savings Bank (In re Stein),* 127 F.3d 292, 295 (2d Cir.1997) (remanding matter to bankruptcy court where party against whom sanctions imposed under Rule 9011 did not have notice and opportunity for a hearing, as required by Rule 11). Effective December 1, 1997, Bankruptcy Rule 9011(b) provides as follows:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument

for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or· discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Bankr.P. 9011(b). Rule 9011(c)(1) now prescribes the following procedure for seeking the imposition of sanctions for Rule 9011 violations:

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

Fed.R.Bankr.P. 9011(c)(1).

■ Waller cannot recover Rule 9011 sanctions from debtor or Wigler because she failed to comply with Rule 9011(c)(1). Even if she had done so, we would not sanction debtor or Wigler under Rule 9011 for filing the Amended Answer. First, they promptly filed the Second Amended Answer in which they withdrew the First Affirmative Defense, thereby conceding that the $96,039.01 in debt evidenced by the 1992 and 1993 Confessions of Judgment are non-dischargeable. More-

over, Rule 9011 sanctions are justified when a pleading is filed for an improper purpose or when it is frivolous. *See Valley National Bank v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1441 (9th Cir.), *cert. denied,* 502 U.S. 826, 112 S.Ct. 94, 116 L.Ed.2d 66 (1991); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990). Although we find no merit to debtor's position regarding the enforceability of the Stipulation and Divorce Judgment under State Law, and note that he failed to address Waller's assertion that federal law dictates whether a claim is dischargeable, and thereby conceded that issue, we do not believe his actions are sanctionable under Rule 9011 or § 105· of the Bankruptcy Code or that Wigler is sanctionable under those provisions and/or § 1927.

■ Waller relies on the Mediator's Report in arguing that we should sanction debtor pursuant to § 105(a) for mediating in bad faith. She contends that debtor acted in bad faith in giving incomplete responses to her document demands and in giving incomplete and evasive answers to questions posed by her counsel during debtor's Rule 2004 examination. She cites various portions of the transcript of the Rule 2004 examination which she says demonstrates debtor's bad faith. Debtor does not deny that § 105(a) empowers us to sanction him if we determine that there is merit to Waller's contentions. However, he denies that he mediated in bad faith and/or that he acted in bad faith during his Rule 2004 examination or in complying with Waller's discovery demands. He cites portions of the transcript that he claims show that Waller's counsel acted in bad faith during the Rule 2004 examination. For purposes of this motion, Waller has stated a *prima· facie* right to sanctions under § 105(a). We find that debtor has adduced sufficient evidence to give rise to an issue of fact regarding whether we should sanction him under § 105 for his conduct during the mediation and/or Rule 2004 examination. Thus, we deny Waller summary judgment on that issue. The parties shall contact chambers to schedule an evidentiary hearing on that limited issue.

*Conclusion*

We grant Waller partial summary judgment that the Article VIII Obligations are non-dischargeable under § 523(a)(5) of the Bankruptcy Code. We abstain pursuant to 29 U.S.C. § 1334(c) from calculating the amount of those obligations and grant Waller relief under § 362(d) of the Bankruptcy Code to commence appropriate proceedings in State Court to calculate and collect them. We deny Waller's request to sanction Wigler and/or debtor under Rule 9011 or § 105(a) of the Bankruptcy Code or to sanction Wigler under 28 U.S.C. § 1927 for filing the Amended Answer and deny, pending an evidentiary hearing, Waller's request to sanction debtor under § 105(a) for his conduct during the mediation and/or Rule 2004 examination.

SETTLE JUDGMENT AND ORDER.